```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ------------------------------------x
 3  UNITED STATES OF AMERICA,

 4
                              Case No. 19-cr-00548
 5      -vs-

 6  GABRIEL LETIZIA, JR.,

 7                         Defendant.

 8  ------------------------------------x

 9                         United States Courthouse
                           White Plains, New York
10
                           May 4, 2021
11                         12:00 p.m.

12          ** VIA VIDEO AND TELECONFERENCE **

13  B e f o r e:
14
                         HONORABLE PAUL E. DAVISON
15
                         Magistrate Judge
16

17  A P P E A R A N C E S:

18  AUDREY STRAUSS
        United States Attorney for the
19      Southern District of New York
    JEFFREY COFFMAN
20  JAMES F. McMAHON
    OLGA I. ZVEROVICH
21      Assistant United States Attorneys

22  OFFICES OF FREDERICK P. HAFETZ
    FREDERICK P. HAFETZ
23      Attorney for Defendant

24  GEORGE WEINBAUM
        Attorney for Defendant
25
```

1          THE DEPUTY CLERK:  Good afternoon.  This is the matter

2  of USA versus Letizia, 19-cr-548.  The Honorable Paul Davison

3  presiding.

4          Counsel, please state your name for the record,

5  starting with the government.

6          MR. COFFMAN:  Good morning, Your Honor.  Good

7  afternoon, I should say.  This is Jeffrey Coffman for the United

8  States with my colleagues James McMahon and Olga Zverovich.

9          THE COURT:  Good afternoon, counsel.

10          Defense counsel, can you identify yourselves?

11          MR. WEINBAUM:  For Mr. Letizia, George Weinbaum.  Good

12  afternoon, Your Honor.

13          THE COURT:  Good afternoon, Mr. Weinbaum.

14          MR. HAFETZ:  And Fred Hafetz, Your Honor, for

15  Mr. Letizia as well.

16          THE COURT:  Okay.  And I see we have Darby, the court

17  reporter.  Thank you for your assistance today.

18          Mr. Letizia, can you hear me?

19          THE DEFENDANT:  Yes, I can, Your Honor.

20          THE COURT:  Okay.  Could you just wave your hand so

21  I'm sure who I am talking to?  Perfect.

22          Okay.  Mr. Letizia, we are still in the midst of the

23  Covid-19 pandemic, and as a result, we are conducting this

24  proceeding remotely.  I want to make sure that that's acceptable

25  to you.  Your counsel, you, the prosecutor, and the Court are

050421.1

1    all connected on a video link on the TEAMS platform.  In

2    addition, the audio component of this conference is being

3    conducted on an AT&T conference line, which is open to the

4    public and the press on a listen-only basis.

5            Now, Mr. Letizia, under normal circumstances, we would

6    all be together in a courtroom, but to ensure everyone's safety,

7    and to avoid the possible spread of the virus, we are conducting

8    this proceeding remotely.

9            (Interruption)

10            THE COURT:  Mr. Letizia, I have received a copy of a

11    written consent form signifying your consent to conduct this

12    proceeding via videoconferencing and/or teleconferencing, and

13    that form is signed by your attorney, Mr. Hafetz.  Have you

14    received a copy of that form?

15            THE DEFENDANT:  Yes, I have, Your Honor.

16            THE COURT:  And did you read it?

17            THE DEFENDANT:  Yes, I did.

18            THE COURT:  And are you consenting to proceed remotely

19    today?

20            THE DEFENDANT:  Yes, I am.

21            THE COURT:  And do I have your permission to sign the

22    written consent form on your behalf?

23            THE DEFENDANT:  Yes.  Would you, please?

24            THE COURT:  Very well.  Then the written consent is

25    accepted for filing, and we will proceed remotely under Rule 11.

1          Mr. Letizia, this is not a trial -- withdrawn.

2          This is not a trial.  I am told you have decided to

3    enter guilty pleas in this case, so we are here to make sure

4    that you are aware of all of your rights and that any waiver of

5    those rights is knowing and voluntary.

6          In addition, the Court has to make certain there is a

7    factual basis for your plea of guilty, and it's important for

8    you to understand that the Court cannot accept your plea unless

9    the Court is satisfied that you are, in fact, guilty.  Do you

10   understand?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  All right.  Mr. Letizia, if at any point

13   you don't hear me or understand what I say, I want you to

14   interrupt me.  I will repeat myself.  I will try to explain what

15   I said.  I will give you an opportunity to consult with your

16   attorneys, but it's very important that you hear and understand

17   everything that goes on here this afternoon.  Will you do that?

18   Will you interrupt me if you don't understand something?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Excellent.

21         Mr. Letizia, you have an absolute right to be

22   represented by a lawyer at this and every stage of the

23   proceedings against you, and you have the right to consult your

24   attorneys before you answer any questions.  Do you understand?

25         THE DEFENDANT:  Yes, sir.

PROCEEDINGS                                    5

```
 1              THE COURT:  I recommend that you take advantage of
 2   that right as necessary and consult with your attorneys if you
 3   need to.  We are not in any hurry here this afternoon.  Okay?
 4              THE DEFENDANT:  Yes.  Thank you.
 5              THE COURT:  Mr. Letizia, if you were to become unable
 6   to afford your attorneys' services, you would be entitled to
 7   apply to the Court for court-appointed counsel, and if the Court
 8   was satisfied that you could not afford to hire a lawyer and --
 9   well, if the Court was persuaded that you could not afford to
10   hire a lawyer, under those circumstances, the Court would
11   appoint an attorney to represent you without cost to you.  Do
12   you understand?
13              THE DEFENDANT:  Yes, sir.
14              THE COURT:  Ms. Brown, would you place Mr. Letizia
15   under oath or affirmation?
16              THE DEPUTY CLERK:  Sure.  Mr. Letizia, please raise
17   your right hand.
18   GABRIEL LETIZIA, JR., having been duly sworn, testified as
19   follows:
20              THE DEFENDANT:  Yes, I do.
21              THE DEPUTY CLERK:  Thank you.  Put your hand down.
22              THE COURT:  Mr. Letizia, you are now under oath.  That
23   means if you knowingly make a false statement during this
24   proceeding, you could be prosecuted for perjury.  You could face
25   up to five years in prison and a $250,000 fine if you were
```

1   convicted for that.

2          For the record, what's your full name?

3          THE DEFENDANT:  Gabriel J. Letizia, Junior.

4          THE COURT:  How old are you, Mr. Letizia?

5          THE DEFENDANT:  I am 71.

6          THE COURT:  Do you read, write, speak and understand

7   English?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  How far did you go in school?

10         THE DEFENDANT:  I went beyond an associate's degree.

11         THE COURT:  Sir, have you ever been hospitalized or

12  treated for narcotic or alcohol addiction?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Within the past 24 hours, have you used or

15  taken any drugs, marijuana, alcohol, medication or pills of any

16  kind?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  Are you feeling clear in your head this

19  afternoon?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Now, Mr. Letizia, have you received a copy

22  of the three-count Superseding Information, which has been filed

23  with the Court?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  That Superseding Information charges you

1   with three counts, also including a forfeiture allegation, and

2   it's -- for the record, it's S2-19-cr-548.  You have seen that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And have you read it over with the

5   assistance of your attorney?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  All right.  Ms. Brown, are you able to

8   arraign Mr. Letizia on the Waiver of Indictment?

9          THE DEPUTY CLERK:  Yes.

10          THE COURT:  Can you go ahead and do that?

11          THE DEPUTY CLERK:  Sure.  Give me one second.  Let me

12   get the -- I'm sorry.  Let me get the form.

13          THE COURT:  You know what?  It's okay.  I will do it.

14          Mr. Letizia, did you sign this Waiver of Indictment?

15          THE DEFENDANT:  Yes, I did, Your Honor.

16          THE COURT:  Did you discuss it with your attorneys

17   before you signed it?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand you are under no

20   obligation to waive indictment?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you understand that if you do not waive

23   indictment, the government will present your case to a grand

24   jury, which might or might not indict you?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand what a grand jury is?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Very well.  The written Waiver of

4    Indictment is accepted and will be placed in the court file.

5          Counsel, does Mr. Letizia waive the public reading of

6    the Felony Information?

7          MR. HAFETZ:  Yes, Your Honor.

8          MR. WEINBAUM:  Yes.

9          THE COURT:  The public reading is waived, and of

10   course, this case has previously been assigned to the Honorable

11   Kenneth M. Karas.

12          Mr. Letizia, this proceeding is referred to as a plea

13   allocution.  I want you to understand that you have the absolute

14   right to have this plea allocution held before a United States

15   district judge, in this case the Honorable Kenneth M. Karas, to

16   whom this case has been assigned.  It is Judge Karas, the

17   district judge, who will impose the sentence in this case.  I am

18   a United States magistrate judge.  If you consent and agree, I

19   will conduct the plea allocution here this afternoon, and I will

20   then make a report to Judge Karas in which I will recommend

21   whether or not Judge Karas should accept your plea of guilty.  I

22   will make that recommendation based on the information that

23   comes out during today's proceeding.  Do you understand?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you understand that you have an

1   absolute right to have this plea allocution conducted before a

2   United States district judge?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Do you consent and agree that I should

5   conduct the plea allocution this afternoon?

6            (Reporter clarification)

7            THE COURT:  Okay.  Mr. Letizia, do you consent and

8   agree that I should conduct the plea allocution here this

9   afternoon?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  All right.  I have been provided with a

12  Written Consent to Proceed Before a United States Magistrate

13  Judge on a Felony Plea Allocution.  The copy in my hands has

14  been signed by Mr. Hafetz, but not by Mr. Letizia.

15           Mr. Letizia, did you see the copy of this document?

16           THE DEFENDANT:  Yes, I did.

17           THE COURT:  Did you read it over with your attorney?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  And do you authorize me to sign the

20  written consent on your behalf?

21           THE DEFENDANT:  Yes, I do, sir.

22           THE COURT:  Did anyone threaten you or coerce you or

23  promise you anything in order to get you to agree to the signing

24  of that consent form?

25           THE DEFENDANT:  No, sir.

 1          THE COURT:  Are you consenting freely and voluntarily?

 2          THE DEFENDANT:  Yes, sir.

 3          THE COURT:  All right.  Counsel, do either of you know

 4  of any reason why this Waiver and Consent to Proceed on a Plea

 5  Allocution Before United States Magistrate Judge should not be

 6  accepted?  Mr. Coffman?

 7          MR. COFFMAN:  No, Your Honor.

 8          THE COURT:  Defense counsel?

 9          MR. WEINBAUM:  No, Your Honor.

10          THE COURT:  All right.  I find that Gabriel Letizia,

11  Jr. is fully competent and capable of waiving his right to

12  appear before a United States district judge in order to enter

13  his plea of guilty.  I, therefore, accept the consent form,

14  which will be signed and placed in the court record.

15          Mr. Letizia, do you understand that your right to be

16  represented by a lawyer continues through every stage of the

17  proceeding, including trial and appeal, and that you have this

18  right whether or not you choose to plead guilty to these

19  offenses?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Have you had an adequate opportunity to

22  consult with your attorneys about your case and especially about

23  your decision to plead guilty?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Are you satisfied with the services which

1  your attorneys have provided to you in this case?

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Have you told your attorneys everything

4  you know about the case?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Now, I have in my hand a plea agreement in

7  letter form.  It is dated November 16, 2020.  It's addressed to

8  Mr. Hafetz in reference to this case, and appears to have been

9  countersigned by Mr. Letizia and Mr. Hafetz on November 23rd and

10  November 24th, 2020, respectively.

11           Mr. Coffman, is this the operative plea agreement?

12           MR. COFFMAN:  That is correct, Your Honor.

13           THE COURT:  And --

14           MR. COFFMAN:  I would note there is an Exhibit A to

15  the agreement --

16           THE COURT:  Which is a Consent Order of Forfeiture.

17           MR. COFFMAN:  That's correct, Your Honor.

18           THE COURT:  And that has just been forwarded to the

19  Court.

20           MR. COFFMAN:  With respect to that, Your Honor, it has

21  been signed by Mr. Letizia, but it has not yet been signed by

22  Mr. Hafetz.

23           MR. HAFETZ:  I will send that in later today, my

24  signed copy, Your Honor.

25           THE COURT:  All right.  Mr. Letizia, did you read this

1    November 16, 2020, plea agreement?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And have you gone over the plea agreement

4    with your attorneys?

5              THE DEFENDANT:  Yes.

6              THE COURT:  I am sorry.  I didn't hear you.

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  And that is your signature which appears

9    on the last page of that agreement?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Did you read the entire agreement before

12   you signed it?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And does that include the consent order of

15   forfeiture, which is incorporated by reference?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And you signed that as well?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Defense counsel, did you review each and

20   every part of the plea agreement with your client?

21             MR. HAFETZ:  Yes, we did, Your Honor.

22             THE COURT:  Mr. Letizia, are you satisfied that you

23   understand this entire plea agreement?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you have any questions either for your

1   attorneys or for me about what the plea agreement says?

2           THE DEFENDANT:  No, sir.

3           THE COURT:  Does this plea agreement contain the

4   complete understanding between you and the government in

5   connection with this case?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Do you understand that anything which is

8   not set forth in the written plea agreement or placed on the

9   record at this time is not going to be binding on the outcome of

10  your case?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Mr. Coffman, is there anything beyond the

13  written plea agreement the Court should be aware of?

14          MR. COFFMAN:  No, Your Honor.

15          THE COURT:  Defense counsel, any other agreement the

16  Court should know about?

17          MR. WEINBAUM:  No, Your Honor.

18          THE COURT:  Mr. Letizia, did you sign the plea

19  agreement freely and voluntarily?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Did anyone force you or coerce you or

22  threaten you or promise you anything other than what is set

23  forth in the written plea agreement itself in order to get you

24  to sign the plea agreement?

25          THE DEFENDANT:  No, sir.

1          THE COURT:  All right.  At this time, Mr. Letizia, the

2   law requires me to advise you of the maximum possible penalties

3   to which you expose yourself by pleading guilty to these

4   charges.  This is the worst case scenario; you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  First, Count One of the Felony Information

7   charges you with participating from in or about 1987 through in

8   or about April 2017, in a conspiracy to defraud customers of AMA

9   Laboratories.  Do you understand that charge?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  If you are convicted as charged under

12  Count One, whether that's by pleading guilty or being convicted

13  by a jury after a trial, you face a maximum term of imprisonment

14  of five years; you face a maximum term of supervised release of

15  three years; you face a maximum fine of the greater of $250,000

16  or twice the gain or loss resulting from the offense; and you

17  also face a $100 special assessment, which is mandatory.

18         Count Two of the Felony Information charges you with

19  willfully causing a misbranded drug to be introduced into

20  interstate commerce from in or about January 2014 through at

21  least in or about April 2017.  Do you understand that charge?

22         THE DEFENDANT:  Yes.

23         THE COURT:  If you are convicted as charged under

24  Count Two, you face a maximum term of imprisonment of one year,

25  a maximum term of supervised release of one year, a maximum fine

1 of the greater of $100,000 or twice the gain or loss resulting

2 from the offense, and a $25 mandatory special assessment.

3         Count Three of the information charges you again with

4 willfully causing a misbranded drug to be introduced into

5 interstate commerce, here between December 2015 through in or

6 about April 2017.  Do you understand that charge?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  And if you are convicted as charged under

9 Count Three, you face a maximum term of imprisonment of one

10 year, a maximum term of supervised release of one year, a

11 maximum fine of the greater of $100,000, or twice the gain or

12 loss resulting from the event, and another mandatory special

13 assessment of $25.

14         Therefore, if you are convicted under all three counts

15 in the Felony Information, you face a maximum term of

16 imprisonment of seven years.  Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Now, Mr. Letizia, with regard to any term

19 of supervised release, I have to caution you that if you are

20 sentenced to a term of imprisonment, even if you are sentenced

21 to the maximum term of imprisonment, and if you are also

22 sentenced to a term of supervised release, and if you then

23 violate the conditions of your supervised release, under those

24 circumstances, you could be sentenced to an additional term of

25 imprisonment for violating the conditions of your supervised

1   release.  In this case, the additional prison term would be two

2   years' imprisonment.

3           Also, if you violate the conditions of your supervised

4   release, you will not receive credit for any time you already

5   served in prison or for time you served on supervised release.

6   Do you understand?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Now, what that means here, Mr. Letizia, is

9   if, for example, you are sentenced to a term of imprisonment on

10  Count One, five years, which is the maximum, and you serve all

11  five, and you then go out on supervised release, you violate

12  supervised release, under those circumstances, the Court can

13  send you back to prison without a jury trial, even though you

14  had already served the maximum term.  Do you understand?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  You are also exposed to the possibility of

17  an order of forfeiture or restitution.

18          Mr. Coffman, I take it there is some agreement in that

19  regard?

20          MR. COFFMAN:  There is an agreement, Your Honor, with

21  respect to forfeiture in the amount of $46,200,000 as set forth

22  in the plea agreement and the consent to an order of forfeiture;

23  and of course, there is also the possibility of restitution,

24  although there has been no agreement as yet on that.

25          THE COURT:  Does the government contemplate seeking

1  restitution above and beyond that $46 million figure?

2        MR. COFFMAN:  The government does intend to assist

3  victims in recovery and restitution, and I do expect that with

4  respect to the question about whether it will be beyond that 46

5  or $42,600,000 number, it's unsure that there will be enough to

6  satisfy both, but we do not --

7        (Interruption)

8        MR. COFFMAN:  -- get about whether there is going to

9  be restitution beyond --

10       (Interruption)

11       (Reporter clarification)

12       MR. COFFMAN:  Sure.  There is no agreement on the

13  question whether there will be more restitution beyond the

14  $42,600,000.

15       THE COURT:  Thank you.

16       Mr. Letizia, do you understand that these are all

17  possible sentences that could be imposed following a plea of

18  guilty in this case?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Are you a United States citizen?

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  I'm sorry.  Could you respond again?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Are you a citizen of any other country?

25       THE DEFENDANT:  No, sir.

PROCEEDINGS                                    18

```
 1              THE COURT:  All right.  Mr. Letizia, I asked you the

 2   question in part because if you were not a United States

 3   citizen -- in fact, I get ahead of myself.  Are you a citizen by

 4   birth or by naturalization?

 5              THE DEFENDANT:  By birth, sir.

 6              THE COURT:  All right.  I ask you these questions in

 7   part because if you were not a United States citizen, or if you

 8   were a citizen by naturalization, a conviction in this case

 9   would adversely affect your immigration or naturalization

10   status.  We don't need to discuss those consequences any further

11   because you are a citizen.

12              Do you understand that you are pleading guilty here to

13   a felony offense, and that a felony conviction may deprive you

14   of certain valuable civil rights, which might include the right

15   to vote, the right to hold public office, the right to serve on

16   a jury, the right to possess any type of firearm, including

17   rifles and shotguns, the right to be considered for certain

18   types of employment, or to be bonded or to serve in the U.S.

19   military, and the right to possess or obtain certain government-

20   issued licenses, including licenses that may be required in

21   certain professions and occupations.  Do you understand that?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Do you understand that because this

24   offense involved fraud or other intentionally deceptive

25   practices, the Court could order you to provide notice
```

1  (interruption) to victims of the offense?

2            (Reporter clarification)

3            THE COURT:  Do you understand, sir, that because this

4  offense involves fraud or other intentionally deceptive

5  practices, the Court has authority to order you to provide

6  notices of your conviction to victims of the offense?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Mr. Letizia, do you understand these are

9  all possible legal consequences of a guilty plea in this case?

10           THE DEFENDANT:  Yes, sir.  I do.

11           THE COURT:  Do you understand that the United States

12 Sentencing Commission has published guidelines for judges to

13 follow in determining the appropriate sentence to impose in a

14 criminal case?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Do you also understand that the guidelines

17 are not mandatory, but must be considered by the Court, along

18 with other factors and other information, when the Court

19 determines the appropriate sentence?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Have you and your attorneys talked about

22 how the sentencing guidelines would be calculated in your case?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Now, the plea agreement that we talked

25 about a couple of minutes ago includes a stipulated guideline

1   range of between 135 and 168 months' imprisonment, but also

2   indicates that because of the statutory maximum, the guideline

3   sentence is 84 months.  The agreement also indicates that

4   subject to your ability to pay, the fine range in this case is

5   between $35,000 and $350,000.  You are aware of those ranges?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Do you understand that these ranges

8   represent nothing more than an understanding between you and

9   your lawyers and government counsel, and that these ranges are

10  not binding on Judge Karas when he imposes sentence in this

11  case?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you understand that Judge Karas will

14  consider the guidelines, but will impose a sentence in

15  accordance with the applicable statutes, which in this case

16  means the only thing you know for sure is that a prison term

17  will not exceed seven years?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand that Judge Karas will

20  not be able to determine the appropriate sentence to impose

21  until after a presentence report has been prepared and after you

22  and your attorney, as well as government counsel, have had an

23  opportunity to challenge the facts reported in the presentence

24  report, as well as the calculation of the sentencing guideline

25  range and any sentence recommendations contained in that report?

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you also understand that if there are

3      any objections to the presentence report, the Court will rule on

4      those objections, and if necessary, the Court will conduct a

5      hearing to determine what information is pertinent to the

6      calculation of your sentence?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Mr. Coffman, do we have an appeal waiver

9      in this agreement?

10             MR. COFFMAN:  There is an appeal waiver, Your Honor.

11             THE COURT:  Can I ask you to summarize it for the

12     record?

13             MR. COFFMAN:  Yes, Your Honor.  The plea waiver is set

14     forth in the agreement on page 4, and it provides that the

15     defendant will not file an appeal directly or bring a collateral

16     challenge so long as the sentence is within the stipulated

17     guidelines range of 135 to 168 months.

18             THE COURT:  That's actually not what it says.

19             MR. COFFMAN:  Within or below that.  I'm sorry, Your

20     Honor.  I don't know where those numbers came from.

21             Will not file a direct appeal or bring a collateral

22     challenge so long as the sentence is within or below the

23     stipulated guidelines sum of 84 months.

24             THE COURT:  Thank you.

25             Mr. Letizia, do you understand that one effect of the

1  plea agreement that you have entered into with the government is

2  that you are giving up rights you might otherwise have had to

3  appeal or otherwise challenge any sentence of imprisonment that

4  does not exceed 84 months?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Do you also understand you are agreeing

7  not to appeal or otherwise challenge any term of supervised

8  release that does not exceed three years, any fine that does not

9  exceed $350,000, and any order of forfeiture that does not

10 exceed $46,200,000?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Defense counsel, have you reviewed with

13 your client the first full paragraph on page 5 of the agreement

14 commonly referred to as the *Brady* waiver?

15          MR. HAFETZ:  Yes, Your Honor.

16          THE COURT:  Are you satisfied that Mr. Letizia

17 understands the consequences of that particular paragraph?

18          MR. HAFETZ:  Yes.

19          THE COURT:  Mr. Letizia, do you also understand that

20 if you didn't agree with or are disappointed by Judge Karas's

21 sentencing decision, that will not give you a basis to withdraw

22 your plea of guilty?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand that parole has been

25 abolished in the federal system, and if you are sentenced to a

1  term of imprisonment, you will not be eligible for early release

2  on parole?

3             THE DEFENDANT:  Yes, sir.

4             THE COURT:  Do you understand you do not have to plead

5  guilty and that you have an absolute right to plead not guilty

6  and to have this case go to trial by judge or by jury?

7             THE DEFENDANT:  Yes, sir.

8             THE COURT:  Do you understand that if you choose to

9  plead not guilty, you are entitled to have a speedy and public

10 trial of your case?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  Do you understand that at any such trial,

13 you would be entitled to the presumption of innocence, and that

14 the presumption would remain with you until the government

15 proved each and every element of the crimes charged beyond a

16 reasonable doubt to the satisfaction of the judge if it's a

17 judge trial, or to the unanimous satisfaction of the jury if

18 it's a jury trial?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  At any such trial, you would have the

21 right, with the assistance of your lawyer, to confront and

22 cross-examine the witnesses against you.  You would have the

23 right to call witnesses to testify on your behalf, and to have

24 subpoenas issued by the Court to compel witnesses to come and

25 testify.  You would also have the right to testify at your

1  trial, but you could not be forced to testify; and if you

2  decided not to testify, your decision to remain silent could not

3  be held against you.  Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  At your trial, you would also have the

6  right I described earlier to the assistance of a lawyer and to

7  have a lawyer appointed to represent you without fee if you

8  could not afford counsel.  Do you understand that if you plead

9  guilty to these charges, you will give up your right to a trial,

10  and except for the right to a lawyer, you will also give up all

11  the other rights that I have explained?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Did you get that, Darby?

14          THE REPORTER:  I did.  Thanks, Your Honor.

15          THE COURT:  Mr. Letizia, have you clearly heard and

16  understood everything I've said to you?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Do you have any questions for me or for

19  your lawyers about anything I have said or anything I have asked

20  you?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  All right.  Then turning to Mr. Coffman,

23  can I ask you to outline the elements of the offenses to which

24  this defendant is pleading guilty, and then tell me what facts

25  the government would be prepared to prove at trial to establish

1    those elements?

2           MR. COFFMAN:  Certainly, Your Honor.  As to Count One,

3    if this matter were to proceed to trial, the government would

4    prove the following elements beyond a reasonable doubt:  Count

5    One is conspiracy to commit wire fraud.

6           First, the government would prove that there was an

7    agreement between two or more people, the unlawful objective of

8    the agreement being to commit wire fraud.

9           Second, that the defendant knowingly and willfully

10   entered into that agreement.

11          And third, that in furtherance of the conspiracy, one

12   member of the conspiracy knowingly committed at least one of the

13   overt acts charged in the Superseding Information.

14          Your Honor, the government would not have to prove

15   that the substantive crime of wire fraud was, in fact,

16   committed, but rather that it was the object of the conspiracy,

17   but nevertheless, I will set forth the elements of wire fraud

18   because it was the object of the conspiracy.  Those are:  First,

19   that the defendant executed a scheme and artifice to defraud and

20   for obtaining money and property by materially false pretenses,

21   representations and promises.

22          Second, the defendant knowingly and willfully

23   participated in the scheme or artifice to defraud with knowledge

24   of its fraudulent nature and with specific intent to defraud.

25          And third, that there was the use of interstate wires

1    in furtherance of the fraud.

2            The last Counts Two and Three, which charges --

3            (Reporter clarification)

4            MR. COFFMAN:  Okay.  As to Counts Two and Three, which

5    charge misbranding, that's --

6            (Interruption)

7            THE COURT:  Just go ahead, Mr. Coffman.

8            MR. COFFMAN:  As to Count Two and Three, the

9    government would prove the following two elements beyond a

10   reasonable doubt:  First, that the defendant caused to be

11   introduced and delivered for introduction into interstate

12   commerce a drug within the meaning of Federal 21 United States

13   Code Section 321(g)(1); and second, that the drug was misbranded

14   in that its drug label failed to reveal material facts as

15   charged in the Superseding Complaint.

16           The government would also have to prove by a

17   preponderance of the evidence that venue in the Southern

18   District of New York is proper.

19           The government, Your Honor, will prove the following

20   facts at trial:  So through beginning in or about 1987 and

21   continuing to April 2017, the defendant willfully and knowingly

22   conspired with others to commit wire fraud and caused the

23   introduction of mislabeled drugs into interstate commerce.

24           (Reporter clarification)

25           MR. COFFMAN:  Your Honor, the government would prove

PROCEEDINGS                                    27

1  that the defendant was the owner and executive director of AMA

2  Laboratories in Rockland County, New York; that AMA tested the

3  efficacy and safety of cosmetics, sunscreens and other products

4  on numbers of volunteer panelists in exchange for fees paid by

5  consumer products companies.

6           From at least in or about 1987 to in or about

7  April 2017, the defendant and his employees of the laboratory,

8  acting at his direction, tested products on materially lower

9  numbers of panelists than the number specified by the

10 laboratory's customers.  The defendant, and employees acting at

11 his direction, falsely represented to the laboratory's customers

12 that they had tested the products on the numbers of --

13           (Interruption)

14           MR. COFFMAN:  -- testified that a laboratory tested.

15 The defendant and other laboratory employees also made

16 materially false and misleading statements about the results of

17 the tests to AMA's customers defrauding those customers of

18 approximately $46,200,000, the fees the customers paid for the

19 testing.

20           The defendant and other laboratory employees sent

21 those reports via interstate wire communications, including by

22 email, to customers throughout the United States and elsewhere.

23 For example, the defendant caused AMA employees acting under his

24 direction to deliver to AMA customers on or about December 4th,

25 2013, and January 27, 2015, reports that falsely reflected the

1   results of AMA testing of two sunscreen products purportedly on

2   a panel of 20 subjects, as well as the measured SPF levels of

3   those sunscreens as charged in Counts Two and Three of the

4   Superseding Information.

5           The customers who requested this testing required the

6   SPF testing on panels of 20 subjects in order to ensure the

7   reliability of AMA's test results for purposes of accurately and

8   lawfully labeling the SPF level of the sunscreen products.  The

9   defendant knowing that the report AMA sent to the customers was

10  false in that testing had not been performed on the whole panel

11  as requested and paid for by AMA's customers.  In so doing, the

12  defendant knowingly caused AMA's customers to market and sell to

13  consumers in the U.S. and elsewhere, sunscreen, a drug within

14  the meaning of the Food, Drug and Cosmetics Act with labels that

15  failed to reveal material facts in that the labels on these

16  products stated that the SPF level of the sunscreen was 50 with

17  no indication on the label that laboratory testing of the panel

18  and paid for by AMA customers had not been performed.

19          The government's evidence as to venue, Your Honor,

20  would include, among other things, evidence that AMA and the

21  defendant were physically located in and operated from New City

22  in Rockland County in the Southern District of New York.

23          Your Honor, the government's evidence would include

24  documentary evidence, including email communications with

25  victims, and fraudulent reports and panelist data seized from

1  AMA, as well as testimony from other AMA employees regarding

2  these practices, and testimony from victim companies.

3          Thank you.

4          THE COURT:  Thank you, Mr. Coffman.

5          Mr. Letizia, did you hear what the assistant U.S.

6  attorney said?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Sir, at this time, how do you

9  wish to plead to Count One of the Superseding Information

10 charging you with conspiracy to commit wire fraud?

11         THE DEFENDANT:  Guilty.

12         THE COURT:  At this time, how do you wish to plead to

13 Count Two of the Felony Information charging you with

14 misbranding?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  And how do you wish to plead to Count

17 Three of the Felony Information, also charging you with

18 misbranding?

19         THE DEFENDANT:  Guilty.

20         THE COURT:  Has anyone threatened you or coerced you

21 or pressured you improperly in order to get you to plead guilty

22 to these charges?

23         THE DEFENDANT:  No, sir.

24         THE COURT:  Has anyone made any promises to you, other

25 than what is set forth in the written plea agreement, in order

1   to persuade you to plead guilty?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Has anyone made any specific promise to

4   you about what the sentence of the Court will be?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  All right, then.  Mr. Letizia, at this

7   time, the law requires me to ask you to tell me in your own

8   words what you did that makes you guilty of these offenses.

9   Let's begin with Count One, the conspiracy to commit wire fraud.

10          THE DEFENDANT:  During the time period from 1987

11   through 2017, I directed employees to test customer products at

12   materially lower numbers than numbers requested by the customers

13   of the laboratory of which I was owner and executive director.

14   In furtherance of this activity, I caused reports to be

15   delivered to customers which overstated the number of customers

16   tested on SPF level in their sunscreen products.

17          THE COURT:  And did you agree with other people to

18   jointly engage in these activities?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And is it a fact that your base of

21   operations was New City, New York in Rockland County?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And this went on between 1987 and about

24   April 2017?

25          THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  And is it a fact that as part of this
 2    scheme, the falsified results of this testing would be
 3    transmitted to customers via email?
 4              THE DEFENDANT:  Yes, sir.
 5              THE COURT:  And in terms of overt acts, on or about
 6    December 4, 2013, you caused a laboratory employee to deliver a
 7    report entitled "Evaluation of Sun Protection by SPF
 8    Determination (FDA) Static" that falsely purported to reflect
 9    the results of laboratory testing of that sunscreen on a panel
10    of 10 subjects?
11              THE DEFENDANT:  I'm sorry, sir.  Could you please
12    repeat that question?
13              THE COURT:  Is it a fact that -- and this is with
14    reference to the overt act alleged in paragraph 5a. on page 3 of
15    the Felony Information -- is it a fact that on or about
16    December 4, 2013, you caused a laboratory employee to deliver to
17    a client company a report entitled "Evaluation of Sun Protection
18    by SPF Determination (FDA) Static" that falsely purported to
19    reflect the results of the laboratory testing of that sunscreen
20    on a panel of 10 subjects?
21              THE DEFENDANT:  I have to read it.  This is the one.
22    December 4, 2013.  In December of 2013, I caused a laboratory
23    employee to deliver to Apex International, Incorporated --
24              MR. HAFETZ:  Excuse me, Your Honor.
25              Mr. Letizia, the judge is reading from page 3 from the
```

1    Information, paragraph a. on that page.  Just take a look at it

2    for a minute.  It's a reference to December 4th, 2013.  He just

3    read these words.  Just take a look at it.

4            THE DEFENDANT:  Then the answer is yes, sir.

5            THE COURT:  You did do that?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  On or about that date?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  All right.  Turning to Count Two, which is

10   misbranding.  What did you do that makes you guilty of this?

11           THE DEFENDANT:  Count Two, approximately

12   November 2013, the laboratory entered into a contract with Apex

13   International to evaluate sunscreen effectiveness of an Apex

14   product on a panel of 10 subjects.  I knew the company required

15   testing on 10 subjects in order to ensure the reliability of the

16   lab's test results for the purpose of Apex accurately labeling

17   the sun protection process of Babyganics Sunscreen.

18           THE COURT:  And did you cause an employee to falsely

19   report the testing of that --

20           MR. HAFETZ:  I am sorry.  I beg your pardon.

21           Mr. Letizia, did you finish your statement with regard

22   to Count Two?

23           THE DEFENDANT:  Okay.  Okay.  No.  No.

24           In December of 2013, I caused a laboratory employee to

25   deliver to Apex International Incorporated Babyganics Sunscreen,

1   a report which falsely overstated the number of subjects tested

2   for SPF level of sunscreen.  During the period from January 2014

3   through April of 2017, I directed reports to be delivered to

4   Apex International Babyganics Sunscreen, which caused the

5   customer's market -- to market misbranded drugs.  The Babyganics

6   Sunscreen label failed to reveal the product had not been tested

7   on the number of persons material to Apex International

8   Incorporated's Babyganics Sunscreen's representation as to SPF

9   50.

10          THE COURT:  And again, you were operating from New

11  City in Rockland County?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And what did you do with regard to Count

14  Three, which is misbranding in 2015 to 2017?

15          THE DEFENDANT:  In Count Three.  In January 2015, I

16  caused a laboratory employee to deliver to Carefree Skin Care

17  Rubber Ducky Sunscreen a report which falsely overstated the

18  number of subjects tested for SPF levels of Rubber Ducky

19  Sunscreen.  And during the time period from December 2015 to

20  April 2017, I caused reports to be delivered to Carefree Sun

21  Care -- I'm sorry -- Carefree Skin Care Rubber Ducky Sunscreen,

22  which caused it to misbrand drugs in that Carefree Skin Care's

23  Rubber Ducky Sunscreen's label failed to reveal that the product

24  had not been tested on the number of persons material to

25  Carefree Skin Care's Rubber Ducky Sunscreen representation as to

```
 1   SPF 50.
 2          THE COURT:  Did you commit these acts that you have
 3   just described knowingly and willfully?
 4          THE DEFENDANT:  Yes, sir.
 5          THE COURT:  Did you know it was against the law to do
 6   what you were doing?
 7          THE DEFENDANT:  Yes, sir.
 8          THE COURT:  All right.  Is there anything else which
 9   either counsel -- (phone interruption) -- believes the Court
10   needs to elicit from Mr. Letizia before making the
11   recommendation contemplated by Rule 11?  Mr. Coffman?
12          MR. COFFMAN:  Your Honor, I think it was thorough, but
13   I believe the defendant may have misspoke with respect to Count
14   One.  I think I heard you say the report overstated the number
15   of customers, but I think you meant the report caused to be sent
16   to customers overstated the numbers of the panelists on which
17   the products were tested.
18          THE COURT:  Mr. Letizia, is that correct?  The reports
19   that your company sent to a customer overstated the number of
20   panelists on whom the product had been tested?
21          THE DEFENDANT:  Yes.  Forgive me.  That should be
22   panelists, not customers.  So it should read the reports which
23   overstated the number of panelists tested for SPF level in their
24   sunscreen products.
25          THE COURT:  Mr. Coffman, I think that clears it up.
```

```
 1                MR. COFFMAN:  Yes.  Thank you, Your Honor.
 2                THE COURT:  Anything else that I need to elicit?
 3                MR. COFFMAN:  Not from the government's perspective.
 4                THE COURT:  Defense counsel, is there anything I need
 5    to elicit at this time?
 6                MR. HAFETZ:  No, Your Honor.
 7                THE COURT:  Defense counsel, do you know of any reason
 8    why the Court should not recommend that your client's plea of
 9    guilty be accepted?
10                MR. WEINBAUM:  No, sir.
11                MR. HAFETZ:  No, Your Honor.
12                THE COURT:  Okay.  Mr. Coffman, do you know of any
13    reason why the Court should not recommend acceptance of these
14    pleas?
15                MR. COFFMAN:  No, Your Honor.
16                THE COURT:  Mr. Letizia, in light of everything that's
17    been said here today, is it still your wish to plead guilty to
18    the charges set forth in the Felony Information?
19                THE DEFENDANT:  Yes, sir.
20                THE COURT:  All right.  Upon this allocution, I find
21    that Gabriel Letizia, Jr. is fully competent, capable of
22    entering an informed plea.
23                The plea is knowing and voluntary and supported by an
24    independent factual basis for each and every element of the
25    crimes charged.
```

1          Accordingly, I respectfully report and recommend to

2    Judge Karas that the pleas be accepted and that Mr. Letizia be

3    adjudged guilty of the offense charged in the Felony

4    Information.

5          I direct the Probation Department to conduct a

6    presentence investigation.

7          Mr. Letizia, this is important.  Arrangements will be

8    made for you to be interviewed by a probation officer.  I am

9    sure your attorneys will assist you in preparing for that

10   interview.  You are entitled to have your attorney present

11   during the interview if you wish.

12         You must be fully honest and truthful during that

13   interview because if Judge Karas learns that you have provided

14   false, incomplete or misleading information, that could be held

15   against you at the time of sentencing.  Do you understand?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Mr. Coffman, the case summary should go to

18   Probation within 14 days.

19         Counsel, you should make contact with Probation and

20   arrange to make your client available for an interview during

21   that interval.

22         I direct the reporter to provide a transcript of these

23   proceedings within 30 days setting forth my report and

24   recommendation to Judge Karas.  That transcript should come to

25   me for review.

```
 1              Mr. Coffman, we can continue with existing bail
 2   conditions?
 3              MR. COFFMAN:  Yes, Your Honor.
 4              THE COURT:  Bail is continued.  We will adjourn.
 5              (Interruption)
 6              THE COURT:  Ms. Brown, do we have a date and time for
 7   sentencing from Judge Karas's chambers?
 8              THE DEPUTY CLERK:  Yes, we do.  September 14, 2021, at
 9   2:00 p.m.
10              THE COURT:  All right.  Counsel should be in contact
11   with Judge Karas's chambers as that date approaches to confirm
12   the date and time of sentencing.
13              Is there anything else -- well, withdrawn.
14              Mr. Coffman, in accordance with Rule 5(f), I direct
15   the prosecution to comply with its obligations under *Brady*
16   *versus Maryland* and its progeny to disclose to defense all
17   information, whether admissible or not, that is favorable to the
18   defendant, material either to guilt or to punishment, and known
19   to the prosecution.
20              Possible consequences for noncompliance could include
21   dismissal of individual charges or the entire case, exclusion of
22   evidence, and/or professional discipline or court sanctions on
23   the attorneys responsible.  I will enter a written order more
24   fully describing these obligations and the possible consequences
25   of failing to comply with them, and I direct the government to
```

1  review and comply with that order.

2          Mr. Coffman, can you confirm that the government is

3  aware of its *Brady* obligations and will comply with them?

4          MR. COFFMAN:  Yes.  Thank you, Your Honor.

5          THE COURT:  Anything else from the government?

6          MR. COFFMAN:  No.  Thank you, Your Honor.

7          THE COURT:  Anything else from defense counsel?

8          MR. WEINBAUM:  No, Your Honor.

9          MR. HAFETZ:  No, sir.

10          THE COURT:  Very well.  We will stand in recess.  Good

11  luck to you, Mr. Letizia.

12          THE DEFENDANT:  Thank you, sir.

13          MR. WEINBAUM:  Thank you, Judge.

14          (Time noted:  1:26 p.m.)

15

16

17

18

19

20

21

22

23

24

25