# Offices of Frederick P. Hafetz *LLC*

**ATTORNEY AT LAW**
**420 Lexington Avenue suite #2818**
**New York, New York 10170**
**TELEPHONE: (2 I 2) 997-7595**
**TELECOPIER. (2 I 2) 997-7646**

Hon. Kenneth M. Karas  **CORRECTED COPY**
United States District Judge
United States District Court
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

May 17, 2022

Re: United States v. Gabriel Letizia Jr.,
19-CR-548 (KMK)

Dear Judge Karas,

I submit this letter in reply to the government sentencing memorandum.

**Alleged hidden $1.000.000 in cash**
The government memorandum states that after the government searched AMA premises in 2017 one of Mr. Letizia's children -referred to as W-1- told the government of $1,000,000 "in cash hidden in cases behind car tires." The government asked this person "to go get it, but that W-1 did not do so." (Memo., p.6). This allegation is patently meritless.

As the government acknowledges, it had already conducted searches of AMA. Upon hearing this allegation the government did not place sufficient credence in this allegation to set it forth in an affidavit establishing probable cause to do further search of the AMA premises for the "million dollars in cash." Instead, the government embarked on an apparent attempt at an unconstitutional warrantless search by asking its cooperator – "W-1" to search the AMA premises and seize the cash without a search warrant. Indeed, the government makes this allegation in its memorandum without an affidavit from the cooperator W-1.

This allegation has no place in the sentencing of Mr. Letizia.

**Alleged safety hazard caused by false statements to manufacturers about number of persons tested**
The government claims that defendant's fraudulent practice of testing "products on a far lower number of panelists, typically 20 or less, rather than the 50 for which the clients had paid"

1

caused safety problems including possible skin cancer from excessive exposure to the sun. (Memo., p. 3). This allegation too is meritless.

The government bases this allegation on a news broadcast report about consumers of sunscreen products about the safety and efficacy of the products. The government then cites a statement from a manufacturer in response to the broadcast stating that its sunscreen product was tested by an independent entity against protocols prescribed in an FDA monograph. The government memorandum asserts that the independent entity was AMA.

Undermining the government safety claim in AMA's testing practices is the critical fact that of 3,000 manufacturers for whom AMA did testing during the time period encompassed in the indictment none of them ever filed a lawsuit of any kind against AMA including any claims relating to safety nor did any customer who purchased product tested by AMA ever file a lawsuit against AMA. Nor has any lawsuit been filed by manufacture or customer against AMA in the years since the well-publicized indictment of AMA for false statements about testing. Moreover, only 3 of the 3,000 manufacturers for whom AMA tested sunscreen – one-tenth of one per cent- have filed victim impact statements. Surely, if the government allegation of health risk caused by AMA testing less persons than the manufactures contracted for testing had substance, there would have been lawsuits or victim impact statements filed with the Court.

Further undermining the government allegation of AMA jeopardizing consumer health by failure to test the number of panelists requested by the manufacturer or recommended by the FDA is the fact that the government took no action to stop AMA from doing business after it learned in its 2017 investigation that AMA was not testing the number requested by the manufacturer. This fact is a powerful refutation of the spectre the government now attempts to create of a public safety issue in AMA's conduct.

Beyond this, it is important to observe that as to the testing protocol referred to in the FDA monograph cited by the manufacturer in response to the broadcast discussed above that this is not a requirement of law or FDA regulation. It is merely a recommendation. The reason for this "protocol" is that Congress has not given the FDA the power to regulate the practices of cosmetic testing agencies. Thus, the notion that non-compliance in testing runs afoul of regulations of the agency entrusted with market place safety of consumer products is incorrect. There is no such regulatory authority. Presumably, if Congress perceived the safety hazard the government attempts to depict, the FDA would be given this authority.

This conclusion is supported by the fact that in this case there is no FDA charge relating to causation of health hazard. The two FDA charges are misdemeanors. Presumably if Mr. Letizia had jeopardized consumer health, the government would have sought FDA felony charges.

Finally, we note the absence of an affidavit from the manufacturer referred to by the government even stating that the formulation marketed by that manufacturer was unchanged in any respect from the formulation of the product tested by AMA of the product for that manufacturer.

**Alleged concealment from Probation Office of a $790,000 receivable**

The government alleges that Mr. Letizia failed to disclose in his financial statement submitted to the Probation Office an asset consisting of a contract to sell the assets of AMA for $790,000. The government allegation is correct. Mr. Letizia should have disclosed this contract and it was a mistake not to do so.

In mitigation of this we discuss here the facts concerning this transaction. In November, 2020 when AMA was barely existing as a result of the publicity about the investigation and the ensuing 2019 indictment of AMA Mr. Letizia entered into a contract to sell the assets of AMA for a net price of $790,000 (the contract price of $840,000 less $50,000 credit to the purchaser for forgiveness of a $50,000 loan previously made by him to Mr. Letizia). The contract required no down payment and required payment within 30 years from the date of the contract with no schedule of payments. By July, 2021 when Mr. Letizia completed the financial affidavit he had received no payment from the purchaser. AMA was essentially defunct. He had no expectation of ever receiving any payment from the purchaser. In his mind the contract was not an asset. He should have listed it in the financial affidavit but in his mind it was not an asset.

**The sentencing guidelines and the significance of Mr. Letizia's history and characteristics under 18 U.S.C. 3553 (a)(1).**

In its myopic and pharisaic view of the discretion of the sentencing judge and the good that Mr. Letizia has done as evidenced by the sentencing letters submitted to the Court on his behalf the government urges that he be sentenced to the maximum of seven years for his plea of guilty to a felony and two misdemeanors. We address this here.

In arguing for a guideline sentence – a top of the range guideline sentence – the government ignores the well-established sentencing jurisprudence that this holding that a Court's guidelines is sweeping. *See Kimbrough v. United States, 552 U.S. 81,92 (2007)*; *see Gall v. United States, 552 U.S. 38 (2007).*

The government also ignores the harm done to individuals in sentencing which sometimes results in a "travesty of justice" from "the guidelines fetish with the "abstract arithmetic" of the fraud loss tables. *United States v. Adelson, 441 F. Supp. 2d 506 (S.D.N.Y. 2006)*; *see United States v. Emmenegger, 329 F. Supp 2d 416,427 (S.D.N.Y 2004)(Lynch, J.)*. Indeed, the Second Circuit has deemed the guideline loss fixation to be so bizarre that its very existence is a valid reason to vary from it. *See United States v. Alaghaim, 842 F. 3d 796, 800 (2016).*

The government also virtually discounts the enormous importance at sentencing of the good that the defendant has done during his lifetime. In *United States v. Gupta, 904 F. Supp. 2d 345, 354 (S.D.N.Y. 2012)* Judge Rakoff stated that taking the "measure of the man" by the good that he has done for other human beings in their lifetime is:
> Virtually ignore(d) by the Guidelines… but here as elsewhere, the Guidelines must take second place to section 3553(a) which requires a court to take account of a defendant's character in imposing sentence.
> And how could it be otherwise, for on this day of judgment, must not one judge the man as a whole?

In their wrongheaded approach to sentencing the government virtually disregards the acts of good character, kindness, compassion and decency that Mr. Letizia has done throughout his 72 years. For example, the government brushes aside the acts of Mr. Letizia as a teenager in saving his mother's life and in saving his siblings from the potentially crippling effects of being placed in an orphanage at young ages on the grounds that these acts occurred many years ago as if there is a statute of limitations on the good that one has done in his/her lifetime.

Continuing in this cramped vein the government attempts to characterize the good deeds related in the bulk of the sentencing letters as no more than using "some of his substantial wealth to help other". (Memo., p. 13). But this dismissive approach is belied by the letters themselves. It ignores the deep humanity and compassion ingrained in Mr. Letizia by the time spent with Jerry Koshel which leads him to write that he "would have died" if not for Gabe Letizia. It ignores the letters from children of two different women with whom he had long term relationships of his devotion to the children long after the relationship had ended. It ignores the letter of Christina Andrianopoulos about how Mr. Letizia was "instrumental" in her release from a kidnapping. It ignores the letters about the many other good deeds by Mr. Letizia – not as charity from a wealthy man but because of his compassion for others.

Finally, in regard to the government harsh maximum sentencing request we note that the two of the seven years requested are for misdemeanor charges. We understand that misdemeanor charges carry potential jail penalties. But in the context of plea bargaining in this District it is reasonable to view these misdemeanor charges not as drivers of the sentence to be imposed.

**Conclusion**

We respectfully request that Mr. Letizia be sentenced to home confinement or, alternatively, if a prison sentence is imposed, that it be no greater than one year in prison.

Respectfully submitted,

_____/s/_____
Frederick P. Hafetz

cc: All counsel (via ECF)